1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   LESLIE WALKER SILVA,

11            Petitioner,           No. CIV-S-05-0403 DFL KJM P

12      vs.

13   STATE OF CALIFORNIA, et al.,       ORDER AND

14            Respondents.          FINDINGS AND RECOMMENDATIONS

15   _____/

16          Petitioner is a California prisoner proceeding pro se with an application for writ of

17   habeas corpus under 28 U.S.C. § 2254.  Petitioner asserts that he has been denied parole in

18   violation of his constitutional rights.  Respondents have filed a motion to dismiss.  Petitioner has

19   filed a motion to expand the record.

20   I.  Motion To Dismiss

21       A.  Failure To Present A Federal Question

22          Respondents argue that petitioner's challenge to denial of parole fails to state a

23   claim upon which relief can be granted.  An application for a writ of habeas corpus by a person in

24   custody under a judgment of a state court can be granted only for violations of the Constitution or

25   laws of the United States.  28 U.S.C. § 2254(a).  For reasons that follow, this court finds that

26   petitioner states a valid habeas claim over which this court has jurisdiction.

1

1          1.  <u>Dannenberg and Sass</u>

2          In <u>Greenholtz v. Nebraska Penal Inmates</u>, 442 U.S. 1, 7, 11 (1979), the United

3  States Supreme Court found that an inmate has "no constitutional or inherent right" to parole,

4  even when a state establishes a system of conditional release from confinement.  The Court

5  recognized, however, that the structure of parole statutes might give rise to a liberty interest in

6  parole that would, in turn, mean an inmate was entitled to certain procedural protections.  <u>Id</u>. at

7  14-15.  In <u>Greenholtz</u>, the Court found that the "mandatory language and the structure of the

8  Nebraska statute at issue" created such a liberty interest.  <u>Board of Pardons v. Allen</u> (<u>Allen</u>), 482

9  U.S. 369, 371 (1987).   What the court found significant in the Nebraska statute and later, in

10  <u>Allen</u>, in the Montana parole statutes, was mandatory language:  the use of the word "shall" and

11  the presumption that parole would be granted unless certain conditions were shown to exist.

12  <u>Greenholtz</u>, 442 U.S. at 11-12; <u>Allen</u>, 482 U.S. at 377-78.

13          In <u>McQuillion v. Duncan</u>, 306 F.3d 895 (9th Cir.  2002), the Ninth Circuit Court

14  of Appeals used the <u>Greenholtz</u>-<u>Allen</u> framework to determine whether California statutes

15  created a liberty interest in parole.  The critical statute at issue in <u>McQuillion</u> is California Penal

16  Code section 3041, which provides in relevant part:

17           (a) . . . One year prior to the inmate's minimum eligible parole
         release date a panel . . .  shall again meet with the inmate and shall
18       normally set a parole release date as provided. . . .The release date
         shall be set in a manner that will provide uniform terms for
19       offenses of similar gravity and magnitude in respect to their threat
         to the public,  and that will comply with the sentencing rules that
20       the Judicial Council may issue and any sentencing information
         relevant to the sentencing of parole release dates. . . . .

21
         (b) The panel . . . shall set a release date unless it determines that
22       . . . consideration of the public safety requires a more lengthy
         period of incarceration. . . .

23

24  /////

25  /////

26  /////

1    The Ninth Circuit found that subdivision (b) was like the statutes in both <u>Greenholtz</u> and <u>Allen</u>:

2            California's parole scheme gives rise to a cognizable liberty interest
             in release on parole. The scheme "'creates a presumption that
3
             parole release will be granted'" unless the statutorily defined
4            determinations are made.

5    <u>McQuillion</u>, 306 F.3d at 901-02.  Again in <u>Biggs v. Terhune</u>, 334 F.3d 910, 914 (9th Cir. 2003),

6    the Court of Appeals reiterated its holding that the California parole scheme created a liberty

7    interest in parole, noting that "California Penal Code § 3041(b) controls" the resolution of the

8    question because its "language clearly parallels the language" under consideration in <u>Greenholtz</u>

9    and <u>Allen</u>.  See also <u>In re Rosenkrantz</u>, 29 Cal.4th 616, 654 (2002) (discussing § 3041(b), the

10   California Supreme Court noted "parole applicants . . . have an expectation that they will be

11   granted parole unless the Board finds . . . that they are unsuitable in light of the circumstances

12   specified by statute and regulation").

13           Respondents argue that the legal landscape has been changed by the combined

14   impact of three cases decided after <u>Greenholtz</u> and <u>Allen</u>:  <u>In re Dannenberg</u>, 34 Cal.4th 1061

15   (2005), <u>cert</u>. <u>denied</u>, ___ U.S. ___, 126 S. Ct. 92 (2005), <u>Sass v. California Board of Prison</u>

16   <u>Terms</u>, 376 F.Supp.2d 975 (E.D. Cal.  2005),[1] and <u>Sandin v. Conner</u>, 515 U.S. 472 (1995).   In

17   <u>Dannenberg</u>, the California Supreme Court noted:

18           Our conclusion that California's parole statutes allow the Board to
             find unsuitability without engaging in a comparative analysis of
19           other offenses or applying "uniform term" principles, and that the
             Board adhered to state law in Dannenberg's case also disposes of
20           his contention that he was denied federal due process rights arising
             from his protected liberty interest, and expectation, in a "uniform"
21           parole date.

22   <u>Dannenberg</u>, 34 Cal.4th at 1098 n.18.  In <u>Dannenberg</u>, the court resolved the "tension between

23   the commands in subdivisions (a) and (b)" of Penal Code section 3041, and the question whether

24

25       [1]  <u>Sass</u> has been appealed to the Ninth Circuit Court of Appeals; oral argument was held
     March 16, 2006.  See <u>Sass v. California Board of Prison Terms</u>, No. 05-16455 (9th Cir. filed
26   Aug. 1, 2005).

1   "the public-safety provision of subdivision (b) takes precedence over the 'uniform terms'

2   principle of subdivision (a)." Id. at 1081-82.  To answer the question, the court examined related

3   legislation, statutory language, case law and agency interpretations.  It noted that

4                [s]o long as the Board's finding of unsuitability flows from
             pertinent criteria, and is supported by "some evidence" in the
5            record before the Board, the overriding statutory concern for public
             safety in the individual case trumps any expectancy the
6            indeterminate life inmate may have in a term of comparative
             equality with those served by other similar offenders.  Section 3041
7            does not require the Board to schedule an inmate's release when it
             reasonably believes the gravity of the commitment offense
8            indicates a continuing danger to the public, simply to ensure that
             the length of the inmate's confinement will not exceed that of
9            others who committed similar crimes.

10   Id. at 1084 (internal citation omitted).  The court recognized the Board's broad discretion in

11   determining an inmate's suitability for parole, but also recognized that "the current statute

12   *requires* the Board to act in each case, either by setting a parole release date, or by expressly

13   declining to do so for reasons of public safety." Id. at 1098.  Its ultimate holding is this:

14                We therefore hold that the Board proceeded lawfully when,
             without comparing Dannenberg's crime to other second degree
15           murders, to its base term matrices, or to the minimum statutory
             prison term for that offense, the Board found him unsuitable to
16           receive a fixed and "uniform" release date by pointing to some
             evidence that the particular circumstances of his crime . . .
17           indicated exceptional callousness and cruelty with trivial
             provocation, and thus suggested he remains a danger to public
18           safety.

19   Id. at 1098.  What Dannenberg did, then, was to find that the provisions of section 3041(a),

20   which appear to require the Board to set a minimum, uniform term, did not create a liberty

21   interest in parole, because the parole board was required to undertake the public safety inquiry of

22   subdivision (b) before setting a uniform term.  Because the Ninth Circuit's determination in

23   McQuillion that the statute does create a liberty interest in parole is based on subdivision (b),

24   Dannenberg does not undercut the McQuillion holding.

25                The California Supreme Court in Dannenberg did discuss subdivision (b) at

26   length.  In the course of that discussion, it noted that the word "shall" in both subdivisions is not

1   used in the absolute sense, but rather is limited in subdivision (b) "by 'unless,' followed by the

2   rule that the Board should *not* set a release date if 'consideration of the public safety' requires

3   lengthier incarceration for the particular inmate." Id. at 1087 (emphasis in original).

4           In Sass, the second case relied on by respondents, the district court relied on the

5   Dannenberg definition of "shall," the statutory scheme of section 3041, California jurisprudence

6   denying the existence of a right to parole, and the broad discretion given to the parole board to

7   conclude that the California statute does not create a liberty interest in parole.  Sass,

8   376 F.Supp.2d at 982-83.

9           As noted above, however, the California Supreme Court's focus in Dannenberg

10  was the minimum and/or uniform term provisions of subdivision (a), not the contours of

11  subdivision (b) as a separate provision.  That court's exegesis of the statutory scheme was

12  designed to resolve the tension between the two subdivisions; in so doing, it rejected the notion

13  that subdivision (a) created any liberty interest in a uniform date or otherwise took precedence

14  over the public safety concerns of subdivision (b).  The court did not hold that subdivision (b)

15  similarly did not give rise to a liberty interest in parole, though it had the opportunity to do so.

16          Moreover, the Dannenberg court did not overrule Rosenkrantz, but instead relied

17  on that case throughout its explication of the state's parole scheme.  See, e.g. Dannenberg, 34

18  Cal.4th at 1082 (relying on Rosenkrantz's description of the parole board's discretion).  Thus,

19  Rosenkrantz's recognition that "[t]he judicial branch is authorized to review the factual basis of a

20  decision of the Board denying parole in order to ensure that the decision comports with the

21  requirements of due process of law" and of inmates' expectation they will be granted parole

22  absent public safety considerations remains intact.  Rosenkrantz, 29 Cal.4th at 618, 654, 658.

23          The limited nature of Dannenberg's reach is illustrated by the decisions of the

24  state Courts of Appeal that have considered parole habeas petitions after Dannenberg's

25  publication.  In In re Fuentes, 135 Cal.App.4th 152, 160-61 (4th Dist. 2005), the court described

26  Dannenberg as clarifying parole standards in its rejection of the notion that the Board must

5

1  undertake a comparative analysis of similar crimes before denying parole based on public safety

2  concerns.  See also In re Lowe, 130 Cal.App.4th 1405, 1418-19 (6th Dist. 2005) (parole is the

3  rule rather than the exception); In re DeLuna, 126 Cal.App.4th 585, 591 (6th Dist. 2005) (a court

4  must consider whether the Board's procedures satisfy due process); In Re Shaputis, 135

5  Cal.App.4th 217, 227 (4th Dist. 2005) ("We are charged with the obligation to ensure the BPT's

6  decision comports with the requirements of due process of law . . .").

7           Taking into account Dannenberg in its entirety, and its state court progeny, the

8  undersigned is of the opinion that the California Supreme Court described the word "shall" in

9  subdivision (b) as "not used in an absolute sense" only because it was limited by the phrase

10 "unless it [the Board] determines that . . . consideration of the public safety requires a more

11 lengthy period of incarceration."  The court did not say "shall" was no longer a command, only

12 that the command had modifiers.

13          Thus, the limitation recognized by the California Supreme Court does not

14 fundamentally alter this court's understanding of California's parole statute at this point in time.[2]

15 The United States Supreme Court found the Nebraska law under consideration in Greenholtz to

16 create a liberty interest in parole even though the law said the parole board "shall order [an

17 inmate's] release unless it is of the opinion that his release should be deferred" for several

18 specified reasons.  Greenholtz, 442 U.S. at 11.  The Montana statute at issue in Allen provided

19 that "the board shall release" inmates "when in its opinion" certain requirements were met.

20 /////

21 /////

22 /////

23 /////

24 /////

25

26     [2] See Sass v. California Board of Prison Terms, No. 01-CIV-S-0835 MCE KJM (E.D.
   Cal.), Findings and Recommendations filed Mar. 16, 2005 at 4-5.

1  <u>Allen</u>, 482 U.S. at 376-77.  As the Court explained:

2  > We reject the argument that a statute that mandates release "unless" certain
3  > findings are made is different from a statute that mandates release "if,"
   > "when," or "subject to" such findings being made.  Any such statute
   > "creates a presumption that parole release will be granted."
4

5  <u>Id</u>. at 378.  Subdivision (b) is the fraternal twin of the statute in <u>Greenholtz</u>; whether or not

6  "shall" is used in an absolute sense, the statute creates a liberty interest in parole.

7          That California's parole board exercises broad discretion in making parole

8  determinations is not inconsistent with the determination that the statute creates a liberty interest

9  in parole.  In <u>Greenholtz</u>, the Supreme Court recognized the similar "broad discretion" vested in

10  the parole board, but found a liberty interest even so.  <u>Greenholtz</u>, 442 U.S. at 13.   Respondents

11  have offered no reason why this aspect of <u>Greenholtz</u> is no longer valid.

12          2.  <u>Sandin</u>

13          In <u>Sandin v. Conner</u>, 515 U.S. 472 (1995), the United States Supreme Court

14  addressed the question of when due process liberty interests are created by internal prison

15  regulations.  The Court concluded it would abandon an examination of "mandatory language"

16  and instead focus its liberty interest inquiry on ensuring "freedom from restraint which ...

17  imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of

18  prison life."  <u>Id</u>. at 484.  Respondents argue this standard now governs the determination of

19  whether section 3041(b) creates a liberty interest in parole.

20          In <u>McQuillion</u>, 306 F.3d at 903, and again in <u>Biggs</u>, 334 F.3d at 914-15, the Ninth

21  Circuit rejected the application of <u>Sandin</u> to a determination of whether a statute creates a liberty

22  interest in parole.  <u>See also Sass</u>, 376 F.Supp.2d at 980-81.  Respondents cite cases from other

23  circuits that have applied <u>Sandin</u> in cases that do not raise challenges to conditions of

24  confinement.  Respondents point to no Supreme Court or Ninth Circuit authority in support of

25  /////

26  /////

their position that <u>Sandin</u> applies to habeas petitioners seeking release on parole.  Based on the record before it, and its reading of the case law, this court is bound to follow <u>McQuillion</u> and <u>Biggs</u>.

       B.  <u>Petitioner Received All Process Due</u>

Respondent also argues that this action should be dismissed because, under clearly established federal law, petitioner received all process due during the parole proceedings at issue.

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Respondents assert that, under clearly established federal law, petitioner was only entitled to the following process during his parole hearing:  (1) an opportunity to be heard in connection with the decision whether to release petitioner on parole, and (2) when parole was denied, a decision informing petitioner in what respects he fell short of qualifying for parole. Respondents cite <u>Greenholtz</u>, 442 U.S. at 16, in support of their position, and claim that because petitioner was afforded these due process protections, this action must be dismissed under 28 U.S.C. § 2254(d)(1).

As also noted by respondents, however, the Ninth Circuit has held that, under clearly established federal law, a decision that results in a denial of parole must be supported by "some evidence" having some indicia of reliability.  <u>Biggs</u>, 334 F.3d at 910; <u>McQuillion</u>, 306 F.3d at 904.  Because petitioner challenges whether the evidence presented at his hearing was constitutionally sufficient, among other things, and because this court is bound to follow Ninth

1   Circuit authority, respondents' due process argument should be rejected.[3]

2   II.  Motion To Expand The Record

3           Petitioner has filed a motion to expand the record with various items. In light of

4   the foregoing, the court will recommend that respondents be directed to file an answer. With

5   their answer, respondents will be required to submit any and all transcripts or other documents

6   relevant to the determination of the issues presented in petitioner's application for writ of habeas

7   corpus. Rule 5, Rules Governing Section 2254 Cases. After respondents submit this material,

8   the court will be able to determine whether expansion of the record is necessary. Accordingly,

9   petitioner's motion to expand will be denied without prejudice to renewal after respondents

10   submit their answer.

11   III.  Request For Counsel

12           Petitioner has requested the appointment of counsel. There currently exists no

13   absolute right to appointment of counsel in habeas proceedings. See Nevius v. Sumner, 105 F.3d

14   453, 460 (9th Cir. 1996). However, 18 U.S.C. § 3006A authorizes the appointment of counsel at

15   any stage of the case "if the interests of justice so require." See Rule 8(c), Fed. R. Governing

16   § 2254 Cases. In the present case, the court does not find that the interests of justice would be

17   served by the appointment of counsel at the present time.

18   /////

19   /////

20   /////

21   /////

22   /////

23

24      [3] In their reply to petitioner's opposition, respondents assert other grounds for dismissal.
Because these grounds were not presented in respondents' motion to dismiss, and therefore not

25   properly briefed with petitioner having an opportunity to respond, the court will not address
them. See, e.g., United States v. Feinberg, 89 F.3d 333, 340-41 (7th Cir. 1996) ("The reply brief

26   is not the appropriate vehicle for presenting new arguments or legal theories to the court.").

1    In accordance with the above, IT IS HEREBY ORDERED that:

2    1.  Petitioner's June 26, 2006 motion to expand the record is denied without

3    prejudice to renewal after respondents file an answer.  If petitioner wishes to renew the motion in

4    its entirety, he may do so at the appropriate time by filing a notice of renewal and referencing the

5    original motion, without filing a new copy of the motion; and

6    2.  Petitioner's April 12, 2006 request for counsel is denied.

7    IT IS HEREBY RECOMMENDED that:

8    1.  Respondents' January 30, 2006 motion to dismiss be denied; and

9    2.  Respondents be directed to file their answer within sixty days of any order

10   adopting the above findings and recommendations.

11   These findings and recommendations are submitted to the United States District

12   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

13   days after being served with these findings and recommendations, any party may file written

14   objections with the court and serve a copy on all parties.  Such a document should be captioned

15   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

16   shall be served and filed within ten days after service of the objections.  The parties are advised

17   that failure to file objections within the specified time may waive the right to appeal the District

18   Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

19   DATED:  August 11, 2006.

21   _____
     UNITED STATES MAGISTRATE JUDGE

25   1
     silv0403.57